IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2011 MAY 18 AM 11:49
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
            DEPUTY

| | | |
|---|---|---|
| WILL MCLEOD, | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | A-10-CV-187 LY |
| | § | |
| AUSTIN POLICE OFFICER JOSHUA | § | |
| MEATEVER, | § | |
|     DEFENDANT. | § | |

## ORDER

Before the Court are Defendant Metteauer's Motion for Summary Judgment, filed March 31, 2011 (Doc. #26); and Corrected Exhibit 1, filed April 15, 2011 (Doc. #28). Plaintiff's response was due April 14, 2011. *See* W.D. Tex. Local R. CV-7(d) (requiring party opposed to motion to respond within eleven days of service of motion and allowing district court to grant motion as unopposed if no timely response is filed). Pursuant to Local Rule CV-7(d), Defendant's motion may be granted as unopposed, if review of the pleadings reveals that it has merit. *See cf. John v. Louisiana Bd. of Trs. for State Colls. & Univs.*, 757 F.2d 698, 707–10 (5th Cir. 1985). As of the date of this order, Plaintiff has not responded to the motion for summary judgment. Having reviewed the motion and summary-judgment evidence at issue in this cause, the Court finds that summary judgment is warranted for the following reasons.

### I. BACKGROUND

Plaintiff Will McLeod ("McLeod") originally filed his complaint, naming as defendants Capital Metropolitan Transit Authority ("Cap Metro"), the Travis County Jail, and Austin Police

Officer Joshua Metteauer ("Metteauer").[1] Because Plaintiff sought leave to proceed *in forma pauperis*, his claims were reviewed pursuant to 28 U.S.C. § 1915(e).[2] The only claims remaining in this action following that review are Plaintiff's claim of a civil rights violation against Metteauer.

Plaintiff's remaining claim against Metteauer is asserted under 42 U.S.C. § 1983. According to McLeod, while off-duty on November 1, 2008, Metteauer was working as a Cap Metro security officer. Plaintiff alleges he ran toward a bus, and was within eight feet of the bus stop, but the driver sped up instead of stopping. McLeod continued to run after the bus which eventually stopped. He states he knocked on the door of the bus, but the driver, David Brown, "yelled in my face and stated that this was not a fucking bus stop." Plaintiff alleges:

> My reply was that you need to watch how you talk to people you don't know if the passenger you are pissing off has a gun or not and I proceed to explain that his job is to pick up passengers he then called security as I got off at the next block and then I said I am going to get your ass fired for this he then proceeded to get out of his seat which I sprayed pepper spray on Mr. Brown because I was afraid that Mr. Brown was going to cause me harm. I ran and hid inside Bank of America building for about 10 minutes in hope that he did not get off the bus to chase me down 6th street.

Plaintiff states he thereafter boarded a different bus. However, two police officers, Metteauer and Detective Trejo, later boarded the bus asked him to step off. After being placed in a squad car,

---

[1] Although Plaintiff identified this Defendant as Joshua Meatever, by way of his answer, Defendant states his name was misspelled by Plaintiff.

[2] The statute provides, in pertinent part:
Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that–
(A) the allegation of poverty is untrue; or
(B) the action or appeal–
(I) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.
28 U.S.C. § 1915(e)(2).

Metteauer searched McLeod's backpack. According to Plaintiff, the search violated his constitutional rights.

Defendant Metteauer filed his motion for summary judgment on March 31, 2011. He contends he is entitled to qualified immunity because his arrest and search of McLeod's backpack was neither a violation of McLeod's constitutional rights, nor did he act other than as a reasonable officer would. To date, McLeod has not filed a response. The motion is now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 110, 122 (5th Cir. 1993). The non-movant must respond to the

motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

### III. SUMMARY-JUDGMENT EVIDENCE

The evidence presented by Metteauer in support of the motion for summary judgment is uncontroverted and thus undisputed. *See Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (where plaintiff fails to respond to summary judgment motion, court may accept defendants' evidence as undisputed). As McLeod admits, he became involved in an altercation with a Cap Metro driver on November 1, 2008, in which he pepper-sprayed the driver. The summary-judgment evidence establishes Metteauer and Detective Alfred Trejo ("Trejo") were working as Cap Metro security officers while off-duty from the Austin Police Department ("APD"). Both were wearing their APD uniforms and badges.

Metteauer received a report from a Cap Metro dispatcher of a bus driver being pepper-sprayed by a passenger. He located the bus and spoke to the driver. The driver informed Metteauer he had been pepper-sprayed in the chest by a passenger and described the passenger. Metteauer observed the driver's shirt was discolored where he had been hit by the pepper spray.

Metteauer searched for, but was unable to locate the suspect. However, Metteauer received a second call from a Cap Metro dispatcher stating the suspect had been seen on another Cap Metro bus. Metteauer located the bus. At the same time, Trejo also responded to the scene.

Metteauer and Trejo boarded the bus. They identified McLeod as matching the description of the suspect. Metteauer asked McLeod to exit the bus. McLeod did so, with a backpack in one

hand. Metteauer placed McLeod in handcuffs due to his concern that McLeod would again be assaultive. Trejo took possession of McLeod's backpack. As Metteauer frisked McLeod, Trejo began questioning him.

McLeod answered simply by stating "Spanish." Trejo began speaking to McLeod in Spanish. McLeod did not respond to the questions, but instead asked for a supervisor and "began yelling nonsensical phrases like 'policia brutality' and 'tacos poder.'"

As Trejo was speaking with McLeod, he was also performing a quick search of the backpack for weapons. Trejo was concerned, even though handcuffed, McLeod might grab the backpack. Trejo did not find any weapons. Metteauer did locate a can of mace/pepper-spray in McLeod's front pants pocket, labeled for law enforcement use only.

The officers placed McLeod in Trejo's vehicle while they contacted a supervisor. At McLeod's request, the officers contacted both a Cap Metro and APD supervisor. The Cap Metro supervisor arrived, accompanied by the bus driver who had reported the assault. The bus driver identified McLeod as the assailant.

Metteauer thereafter decided to place McLeod under arrest and transport him to jail for possession of pepper spray and assaulting the bus driver. Metteauer confiscated the pepper spray to have it placed into evidence. McLeod was moved from Trejo's vehicle to the vehicle of the APD supervisor because the car had a cage between the front and back seats. Pursuant to APD policy, Metteauer conducted a search of McLeod's backpack for the purpose of inventorying its contents. No contraband was located in the backpack and McLeod was not charged with any offense for anything located in his backpack.

## IV. DISCUSSION

Metteauer has moved for summary judgment on the ground that he is entitled to qualified immunity from McLeod's claim. Law enforcement officials are immune from suit for discretionary acts performed in good faith while acting within the scope of their authority unless their conduct violates a "clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This requires a two-part analysis. First, the court must determine "whether the plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 735 (2002); *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If not, the official is entitled to qualified immunity, and the court need not continue to the second step of the analysis. *Chavez v. Martinez*, 538 U.S. 760, 766 (2003). If the plaintiff sufficiently alleges the violation of a constitutional right, the Court must decide whether that right was clearly established at the time of the alleged violation and whether the conduct of the officer was objectively unreasonable under the circumstances. *Siegert v. Gilley,* 500 U.S. 226, 231-33 (1991).

Metteauer first argues he is entitled to qualified immunity because McLeod has failed to establish the existence of a constitutional violation. The Court agrees. The undisputed summary-judgment evidence shows that McLeod's backpack was searched following his arrest for the purpose of inventorying its contents. An inventory search does not violate the "Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the . . . owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999).

By way of his affidavit. Metteauer has testified it is his standard practice to conduct an inventory search of an arrestee and his personal property pursuant to APD policy. Metteauer has also provided the APD General Order setting forth Arrest and Booking Procedures in effect at the time of McLeod's arrest. The Order states, in pertinent part:

> No matter what the prisoner's physical condition, it is the responsibility of every arresting/transporting officer to ensure that the prisoner is <u>thoroughly</u> searched for weapons, contraband, personal property and evidence BEFORE being turned over to jail personnel.... During an arrest, officers have full responsibility for the care and protection of the prisoner's personal property. Officers will search the prisoner thoroughly prior to transport to the booking facility.

Metteauer further states in his affidavit that the search is conducted to protect against a claim of lost, stolen or damaged property, as well as to ensure the arrestee does not have any items which pose a danger to others, but not for the purpose of looking for evidence. Trejo and an APD supervisor confirm Metteauer's testimony. The Court finds the summary-judgment establishes that Mettauer's search was a valid inventory search that did not violate McLeod's constitutional rights. *See, e.g, United States v. Lage*, 183 F.3d 374, 380-81 (5th Cir. 1999) (holding inventory search performed in accordance with standardized procedures and did not violate Fourth Amendment where officer gave unchallenged testimony that post-arrest inventory searches are routine and performed for "liability purposes"); *United States v. Bullock*, 71 F.3d 171, 178 (5th Cir. 1995) (officer's unrebutted testimony that standard procedures of police department were followed sufficient to validate inventory search); *United States v. Como*, 53 F.3d 87, 92-93 (5th Cir. 1995) (officer's testimony that police department's established procedure is to conduct inventory search for purpose of "safekeeping" sufficient to satisfy Fourth Amendment).

Because the Court has concluded that McLeod has not established a violation of his constitutional rights by Metteauer, McLeod has failed to satisfy the first portion of the qualified-

immunity analysis. His failure to establish an actionable violation of his constitutional rights terminates the qualified-immunity analysis.

## V. CONCLUSION

**IT IS ORDERED** that Defendant Mettauer's Motion for Summary Judgment (Doc. #26) is hereby **GRANTED**.

SIGNED this 18th day of May, 2011.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE